UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL PAUL LINDSEY,<br><br>    Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>    Defendant. | Case No. 4:24-cv-00082-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Union Pacific Railroad Company's "Motion to Dismiss Plaintiff's Complaint for Lack of Jurisdiction" ("Motion"). Dkt. 17. On September 18, 2024, the Court held oral argument and took the Motion under advisement. Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

After serving seventeen-years as a conductor and engineer for Defendant, Union Pacific Railroad Company ("Union Pacific"), Plaintiff Michael Lindsey alleges he was terminated for reporting safety concerns to Union Pacific, government officials, and on social media. Dkt. 18, at 1. Lindsey was terminated on April 21, 2023, and filed a complaint with the Occupational Safety and Health Administration ("OSHA") on May 25, 2023, alleging his termination violated the Federal Railroad Safety Act, 49 U.S.C. § 20101 et. seq. (the "FRSA"). *Id.* at 3.

On July 28, 2023, OSHA dismissed Lindsey's complaint, finding there was no nexus between Lindsey's termination and his safety complaints, and concluding Union Pacific had legitimate reasons for terminating him. Dkt. 17-2. Pursuant to the enforcement procedures set forth under the FRSA, Lindsey appealed OSHA's decision to an Administrative Law Judge ("ALJ") the next day, and the ALJ issued a Notice of Case Assignment on September 14, 2023. Dkt. 18, at 4. The ALJ set an initial scheduling conference for November 27, 2023, and, in the meantime, instructed the parties to, within certain time frames: (1) file a formal notice of appearance; (2) begin formal discovery; (3) file a pleading complaint; and (4) ultimately attend the scheduling conference. Dkt. 18-3, at 3. Lindsey's counsel did not comply with any of these instructions. *Id.* at 4.

On November 28, 2023, when Lindsey's counsel failed to attend the scheduling conference, the ALJ issued a ruling staying the case. Dkt. 17-2, at 23. Additionally, the ALJ found that while Lindsey's counsel's behavior was neglectful and wasteful, such conduct did not constitute bad faith under current case law. *Id.* Further, the ALJ directed Lindsey to provide a copy of his federal complaint—once filed—in order to obtain dismissal of his administrative proceeding. *Id.*

On February 9, 2024, Lindsey filed the instant suit. Dkt. 1. On March 25, 2024, Union Pacific filed a Motion to Dismiss for lack of subject matter jurisdiction under 49 U.S.C. § 20109(d)(3). Dkt. 17.

### III. LEGAL STANDARD

#### A. Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the

Court's subject matter jurisdiction. A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). If the court determines it does not have subject matter jurisdiction, it must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

**B. FRSA**

The FRSA was enacted in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. An employee protections section was first added to the Act in 1980 to ensure that railroad companies did not retaliate against employees who, among other things, "reported violations of federal railroad safety laws or refused to work under hazardous conditions." *Norfolk Southern Ry. Co. v. Solis*, 915 F. Supp. 2d 32, 37 (D.D.C. 2013) (citing Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-423, § 10, 94 Stat. 1811, 1815 (1980)).

To pursue an FRSA whistleblower complaint under Section 20109, an employee must first file a complaint with OSHA, which investigates the complaint and issues findings and a preliminary order. *See* 49 U.S.C. § 20109(d)(1–2). If either party objects to OSHA's determination, it may then seek a final decision from the Department of Labor. The FRSA also contains a "kick-out" provision, which allows an employee to bring his FRSA action in a district court if the "Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith

of the employee." *Id.* § 20109(d)(3). Before using the kick-out provision, the employee must provide 15-days' notice to the Department of Labor that he intends to file a lawsuit. *Id.*

## IV. ANALYSIS

### A. Bad Faith

Union Pacific claims Lindsey acted in bad faith by failing to follow the orders of the ALJ regarding the initial scheduling conference, which prevented the Secretary of Labor from entering a final order in his case before the 210-day deadline. Dkt. 17-1, at 6. This, Union Pacific argues, deprives the Court of subject matter jurisdiction over this case. *Id.* Lindsey counters—and the ALJ specifically found—that case law does not support a finding of bad faith under the circumstances. Lindsey further counters that even if Lindsey's counsel had complied with the ALJ's order, a final decision would not have been issued before the deadline. Dkt. 18, at 8–10.

As a preliminary matter, the Court notes that, although Lindsey bears the burden of establishing subject matter jurisdiction, he is not required to affirmatively show "good faith" in his delay. While Union Pacific contends the kick-out provision requires Lindsey to show good faith (Dkt. 17-1, at 6), that provision simply states an employee may bring an action in district court "if the Secretary has not issued a final decision within 210 days after the filing of the complaint *and if the delay is not due to the bad faith of the employee*." 49 U.S.C. § 20109(d)(3) (emphasis added). A plain and ordinary reading of the statute indicates Lindsey must only show that any delay beyond the deadline was not due to his bad faith.

MEMORANDUM DECISION AND ORDER - 4

"Bad faith" is defined as dishonesty of belief, purpose, or motive. *Bad Faith*, *Black's Law Dictionary* (12th ed. 2024). Bad faith can, in some instances, include the delay of litigation or preventing the enforcement of a court order. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Union Pacific points out that Lindsey failed to respond to the ALJ's order, which delayed the agency's litigation process. Dkt. 17-1, at 6. However, against the backdrop of case law interpreting § 20109(d)(3), and consistent with the ALJ's ruling, the Court finds Lindsey's conduct does not rise to the level of bad faith.

Lindsey relies on three cases to support his position. In *Pfeifer v. Union Pacific*, a former Union Pacific employee filed a whistleblower complaint with OSHA and, following unfavorable decisions from both OSHA and a subsequent ALJ, appealed to the Administrative Review Board ("ARB"). Union Pacific argued the former employee exhibited bad faith by engaging in extensive discovery, wasting resources by participating in a three-day hearing before the ALJ, and appealing only to cause a delay such that the FRSA kick-out provision would apply, rather than because he actually intended to follow through on the appeal. *Pfeifer v. Union Pacific R.R. Co.*, 2013 WL 1367054, at *5 (D. Kan. Apr. 3, 2013). The court disagreed, noting that although sometimes inefficient (and concededly frustrating), the FRSA's procedures allow a plaintiff to litigate a case in front of an ALJ and to then re-litigate the case in federal court. *Id.* The court thus found the fact the former employee took advantage of such procedures—including potentially filing an appeal solely to delay a final decision before the 210-day deadline lapsed— "would not be indicative of bad faith." *Id.* Accordingly, the kick-out provision applied, and the court retained subject matter jurisdiction.

Similarly, in *Lynch v. Union Pacific R.R. Co.*, a former employee undisputedly delayed a final decision on his FRSA whistleblower complaint by seeking additional OSHA investigation, indicating he did not intend to file suit in federal court, entering into a scheduling order before the ALJ, and preparing for and conducting an extensive hearing. 24 F. Supp. 3d 597. Despite his indications to the contrary, the former employee ultimately filed his complaint in federal court but waited until five months after his administrative hearing to do so. *Id.* Nonetheless, the district court found that the FRSA "permits such gamesmanship," and that "taking advantage of the rights afforded by Department of Labor regulations," which permitted the former employee's intentional delays, does not amount to bad faith that would deprive the court of jurisdiction. *Id.*

Finally, in *Wagner v. Grand Trunk Western R.R.*, the district court considered a railroad's contention that a former employee acted in bad faith by participating in the administrative process while knowing he could exercise the kick-out provision if he received an adverse administrative result. 2016 WL 1161351 *4 (E.D. Mich. Mar. 23, 2016). The district court (citing the cases the Court has discussed above) noted that "[n]o court has found that merely exercising the kick-out rights conferred under § 20109(d)(3) constitutes bad faith." *Id.* The district court thus found there was no bad faith in the former employee's conduct, "even if it prolonged [the] litigation." *Id.*

The Court finds such reasoning persuasive.[1] It is very possible that Lindsey never intended to follow through on his appeal to the ARB, as his counsel failed to comply with

---

[1] The Court notes that these three cases all come from district courts outside the Ninth Circuit. Very few courts have issued decisions construing the FRSA's kick-out provision; indeed, the Court's independent

any portion of the ALJ's order, and even purportedly stated that he was planning on removing the case to district court once the deadline expired.[2] Dkt. 17-2, at 19. But as the *Pfeifer* court held, even if a FRSA litigant "had no intention of actually following through on [his] appeal . . . filing a protective appeal to maintain his right of removal to federal court would not be indicative of bad faith." 2013 WL 1367054, at *5. Thus, even if Lindsey merely filed a protective appeal with the ARB to preserve his right to file the instant suit, such conduct does not constitute bad faith which would deprive the Court of subject matter jurisdiction.

Additionally, and unlike the plaintiff in *Lynch* who misrepresented his intent to file in federal court, Lindsey consistently indicated he would ultimately file the instant suit, and following through with this intention does not suggest bad faith. And, while it is true that Lindsey's failure to comply with the ALJ's orders and his two-month delay before filing his federal suit certainly prolonged the final resolution of his case, every court that has addressed the issue has found such delay is permissible under the FRSA. Accordingly, the Court finds Lindsey's actions were not taken in bad faith.

The Court's finding is supported by the ALJ's ruling itself. Union Pacific repeatedly cites the ALJ's ruling to support its position that Lindsey acted in bad faith. Dkt. 17-1, at

---

research revealed only two additional cases interpreting the provision beyond the three proffered by Lindsey, and those cases addressed a timing issue not relevant to the facts of this case. *See Mullen v. Norfolk S. Ry. Co.*, 2014 WL 1370119 (E.D. Pa. Apr. 8, 2014); *Glista v. Norfolk S. Ry. Co.*, 2014 WL 1123374, at *1 (E.D. Pa. Mar. 21, 2014). Accordingly, and in the apparent absence of any Ninth Circuit precedent addressing the issue, the Court joins with the other districts reference herein in finding the circumstances at issue do not constitute bad faith.

[2] The ALJ commented in his stay Order that, at the scheduling teleconference on November 27, 2023, Defendant's counsel had indicated Plaintiff's counsel had made this comment.

5–6. In particular, Union Pacific cites the ALJ's statements that the repeated violations of the agency's initial order indicated "'contempt for [the] tribunal, or extreme discourtesy or disrespect.'" Dkt. 17-1, at 5. However, counsel failed to include perhaps the most relevant part of the ALJ's ruling, which stated, "[b]ut does this lack of action by counsel meet the standard of 'bad faith?' The undersigned has found no case under the FRSA which would deem it so." Dkt. 17-2, at 23.

The Court agrees with the ALJ that Lindsey's "lack of compliance and attention to [the] matter [was] neglectful and a waste of resources. At the very least a motion to stay proceedings, or even an email expressing the intent to file in district court, would have been appropriate." *Id.* But for the reasons stated above, the Court also agrees with the ALJ that such behavior does not meet the standard of bad faith.

Finally, the Court is persuaded by Lindsey's argument that even if his actions constituted bad faith, such conduct was not the cause of the Secretary's failure to issue a final decision by the deadline. As the district court noted in *Lynch*, "it is oftentimes unlikely that a decision can be reached within the 210-day deadline set by the statute regardless of the good faith or bad faith of the plaintiff." 24 F. Supp. 3d at 601. In this case, the initial scheduling conference for the administrative appeal was set for November 27, 2023, a mere 24-days prior to the 210-day deadline of December 21, 2023. Even if Lindsey had perfectly complied with the ALJ's order, it is extremely unlikely a final decision would have been made within the 24 days following the conference. Union Pacific has failed to show Lindsey's behavior, rather than the mere fact of an impracticable statutory timeline, caused

the deadline to lapse without a final decision from the Secretary.³

As other courts have acknowledged, it is an unfortunate reality that the FRSA makes a case removeable even after significant resources have been expended at the administrative level. However, such consequence may be remedied only by Congress, and not by the Judiciary. *See Lynch*, 24 F. Supp. 3d at 601–02.

**B. Laches⁴**

Union Pacific next argues that, even if subject matter jurisdiction is proper under § 20109(d)(3), the doctrine of laches still precludes Lindsey's suit. Dkt. 17-1, at 7. Laches is an equitable defense that prevents plaintiffs from sleeping on their rights. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950–51 (9th Cir. 2001) (citation omitted). Laches may only be established where the defendant proves (1) unreasonable delay, that (2) prejudices the defendant. *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). Union Pacific has not shown either of these elements.

Union Pacific cites *Henin v. Soo Line*, a case finding laches applied to a §

---

³ Union Pacific relied heavily—both in its reply brief and at oral argument—on *Mulllen v. Norflen S. Ry. Co.*, 2015 WL 3457493 (W.D. Penn. May 29, 2015) for its argument that 49 U.S.C. § 20109(d)(3) does not provide an unlimited right to bring suit in federal court and should not be used to allow a plaintiff to get a "second bite of the apple." Dkt. 21, at 2–3. Union Pacific suggests Lindsey is attempting to get that second bite here. While there does seem to be some tension between *Mullen* and the other decisions referenced herein, *Mullen* also involved a plaintiff who had received a final decision from an ALJ, then filed an agency appeal, and then filed in federal court. The *Mullen* court noted, "[Plaintiff's] reading of the statute is particularly troubling where, as here, a plaintiff receives an unfavorable (yet merits-based) decision from an ALJ, appeals to the [Administrative Review Board] … and attempts to relitigate his claim as if nothing occurred at the administrative level." By contrast, Lindsey did not receive a final merits-based decision within the statutory timeframe. His case is more analogous to the cases referenced *supra*, and the Court reaches the same ultimate conclusion.

⁴ Although Union Pacific abandoned its laches theory during oral argument, the Court briefly addresses it in the interest of completeness.

20109(d)(3) claim, as the main support for their laches argument. Dkt. 17-1, at 7; *Henin v. Soo Line R. Co.*, 2021 WL 2417709, at *2 (D. Minn June 14, 2021). In *Henin*, the plaintiff filed a complaint with the Secretary in 2015, and later appealed an adverse decision but did not participate in discovery on appeal. The ALJ issued its decision in early 2019, and only after untimely appealing the decision to the ARB did the plaintiff finally file in federal court. *Id.* After various appeals and stays in both the agency and federal court proceedings, the case ultimately proceeded in federal court in 2021, nearly 6 years after the initial filing with the Secretary. *Id.* The federal court held the plaintiff's delay in filing his federal complaint, and the resulting difficulty in investigating his claims, invoked the doctrine of laches. *Id.* at *4.

This case is distinct from *Henin* in several ways. First, Union Pacific seems to suggest that Lindsey's failure to follow the ALJ's order prior to the 210-day deadline was comparable to the *Henin* plaintiff's failure to participate in discovery on appeal. Dkt. 17-1, at 7–8. The doctrine of laches was not applied in *Henin* because the plaintiff failed to participate in discovery; rather, it was applied because the plaintiff waited 4 years, well past the time in which he could have filed after 210 days, to file his federal suit. The court found such excessive delay was *per se* unreasonable. Here, Lindsey's right to file in district court did not vest until December 21, 2023, and he filed on February 9, 2024, a mere 50 days later. If the purpose of laches is to ensure that plaintiffs do not "sleep on their rights," Lindsey certainly fulfilled that purpose by filing the instant suit less than two months after the ALJ permitted him to do so.

Additionally, Lindsey was clear about his intent to file with the Court, and Union

MEMORANDUM DECISION AND ORDER - 10

Pacific has failed to demonstrate that they will be prejudiced whatsoever by his brief delay.[5] In the absence of any facts to suggest Union Pacific would be prejudiced by the continuation of this case, the doctrine of laches does not apply.

## V. CONCLUSION

Lindsey did not engage in any behavior that could amount to bad faith, and Union Pacific has not shown Lindsey's behavior caused the 210-day deadline to lapse. Additionally, there has been no unreasonable delay or prejudice such that laches would bar Lindsey's suit. In sum, subject matter jurisdiction is proper under 49 U.S.C. § 20109(d)(3).

## VI. ORDER

The Court HEREBY ORDERS:

1. Union Pacific's Motion to Dismiss (Dkt. 17) is **DENIED**.

DATED: March 19, 2025

David C. Nye
Chief U.S. District Court Judge

---

[5] Neither party conducted any discovery in the case before the Administrative Law Judge.